JOE RICE v. THE STATE.

No. 15734. Delivered March 29, 1933.
Reported in 59 S. W. (2d) 119.

The opinion states the case.

*Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is conspiracy to rob; the punishment, confinement in the penitentiary for two years.

The appellant was jointly indicted with Charlie Rice, Willie Rice, Chick McKay, H. E. Bell, and Ollice Woods in the first count with having entered into a conspiracy to assault W. F. Roberts Jr., and put him in fear of life and bodily injury to fraudulently take from him and his possession, etc., and in the second count with conspiracy with said parties above mentioned to assault the cashier of the Lohm State Bank by putting him in fear of life and bodily injury to fraudulently take from his possession personal property belonging to said bank, etc.

The testimony in brief was to the following effect: About 7:30 o'clock on the morning of January 6, 1930, W. F. Roberts, Jr., the cashier of the Lohm State Bank, went to the bank preparatory to opening said bank for the day. As he unlocked the front door and entered, he was confronted by a man with a drawn pistol, who required him to unlock the vault and deliver to him approximately $1,400.00 of the bank's money. The money so taken consisted of bills of different denominations and some silver—nickels, dimes, quarters, and half dollars. Said Roberts testified that he saw the form of another man coming from the back or end of the lobby of the bank, but that he did not see the other man well enough to identify him. He further testified that the man who held him up would weigh about 190 or 200 pounds, and the other man seemed to be taller and not as heavy as the man who held him up. The state through its district attorney, in open court, after said testimony had been given by the said Roberts, admitted that the appellant was not there at the bank on that occasion.

Another witness testified that he lived about 50 yards west of the Lohm State Bank, and about 8 o'clock on the morning of the alleged robbery he saw two men come out of the back door of the bank and get into a model A Ford roadster parked there and leave immediately thereafter going in a northeastern direction. Several witnesses testified for the state that they noticed

a Ford roadster going up the Santa Anna road, which road led in the direction of what was known as the Jennings oil lease in Coleman county. They all testified that the car was going at a rapid rate of speed, and they could not recognize who was in the car or the number of persons in the car because the curtains of said car were up. It was also in evidence that on the morning of the alleged robbery a Ford roadster with the curtains up was seen coming towards the house of appellant's brother, Willie Rice, but the witness testifying could not tell whether there was more than one man in the car or not. The car was going toward a vacant house about half a mile from the house of Willie Rice. The evidence further showed that the vacant house had formerly been occupied by the appellant and his family, but that some months prior to the venture herein related the appellant had moved away with his family, but had left a few things in the house at the time he moved. At the time of the alleged offense, he and his wife were visiting his brother, Willie Rice, at said Willie Rice's home. The testimony was also to the effect that the lights on said car seen going toward the vacant house were burning at the time. There was further testimony in behalf of the state that a few minutes after the car passed the house of Willie Rice the appellant and the said Willie Rice with another man were seen to leave Willie Rice's house and go toward the vacant house. It is also shown by the evidence that the Ford roadster testified about was later seen parked in the vicinity of the vacant house and the lights were still burning. Several hours after the robbery, officers went to said vacant house, and, upon approaching the house, they saw 5 or 6 men fleeing from the vicinity thereof. A gun fight ensued in which Ollice Woods was killed, and his body was afterwards identified by the witness Roberts as the person who perpetrated the actual robbery. The officers found some currency in the vacant house, and this currency was identified by the witness Roberts by some clips that had been placed on the currency by himself. The money was not marked otherwise. It was also in evidence that the clips placed on the currency could be purchased from any stationery drummer, and were more or less in common use.

The state also put upon the witness stand the appellant's brother, Charlie Rice, who testified that on the day before the alleged robbedy he, intending to go to California where some of his people lived, had, together with Ollice Woods, taken the appellant's car while the appellant was in bed, and, without informing the appellant, went to Brownwood, where the said Charlie Rice left Ollice Woods in possession of the car with the promise that the said Woods would take the car back to the appellant.

The appellant strenuously contends that the evidence was insufficient to support a conviction, and we have not attempted to fully state the facts in this opinion, because the evidence in this case is practically the same facts as were developed in the case of Willie Rice v. State, 51 S. W. (2d) 364, recently decided by this court, and also in the case of Charlie Rice v. State, 53 S. W. (2d) 629. In the Willie Rice case, the offense there charged was a conspiracy to commit the crime of robbery, while in the Charlie Rice case he was convicted as a principal to the robbery. Both of said cases grew out of the same transaction, and in both of said cases this court held on appeal that the testimony was insufficient to warrant a conviction. The record shows that the present case was tried before the opinions in each of the above cases were handed down.

Article 1622, P. C., defines a conspiracy as an agreement entered into between two or more persons to commit a felony. Article 1624, P. C., provides: "Before a conviction can be had for the offense of conspiracy, it must appear that there was a positive agreement to commit a felony. It will not be sufficient that such agreement was contemplated by the parties charged." After fully considering all the facts in the case, we are of the opinion, taking the testimony in its strongest and most favorable light for the state, that it does not show a positive agreement, as required by the statute, to commit the offense of robbery. The state in this case relies for conviction alone on circumstantial evidence, and the trial court so charged the jury. A conviction on circumstantial evidence cannot be sustained unless the circumstances proven exclude every other reasonable hypothesis except that of the guilt of the accused. Proof that only amounts to strong suspicion or mere probability is not sufficient to support a conviction. Branch's Ann. P. C., sec. 1877; Hernandez v. State (Texas Crim. App.), 72 S. W., 840. There must be evidence overcoming the presumption of innocence and excluding every other reasonable hypothesis except the guilt of the defendant. Pogue v. State, 12 Texas App., 283; Hogan v. State, 13 Texas App., 319; Clifton v. State, 39 Texas Crim. Rep., 619, 47 S. W., 642. This, we think, the evidence fails to do.

By a proper bill of exception it is shown that H. E. Bell, who was jointly indicted with the appellant on trial, was called to the witness stand, notwithstanding the court had been advised that he would refuse to testify because he was indicted for the same offense. Both the district attorney and the court were advised that the same attorneys representing the appellant also represented his codefendant, H. E. Bell, and the court was re-

quested to admonish the district attorney not to place the witness on the stand. The request was denied and over appellant's objection the district attorney was permitted to call the said H. E. Bell as a witness and have him decline to testify, all in the presence of the jury. This should not have been allowed and constitutes error, as it could be offered for no other purpose under the circumstances than to compel or invite the said Bell, who was then under indictment for the same offense, to refuse to testify in order to use this as an incriminating fact against the appellant. This direct question was passed upon in the case of McClure v. State, 95 Texas Crim. Rep., 53, 251 S. W., 1099, 1102, and as said by Judge Lattimore in said opinion:

"Every man has a constitutional right to decline to give testimony which would incriminate him, and it is held that, if he declines to testify, no inference of guilt may be drawn from his refusal to answer. Owens v. State, 7 Texas App., 334. Certainly, if no inference of guilt can be indulged against the man who declines to testify, none can be drawn as to the guilt of a codefendant. Appellant should not in any way be held accountable for the refusal of McComber to give testimony. If the state's purpose in putting this witness on the stand was to compel or invite his refusal to testify, in oder to use this as an incriminating fact against the appellant, the state was guilty of an injustice."

See, also, Rice v. State, 51 S. W. (2d) 364, where the same identical question was presented.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.